IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23–cv–01663–CNS–MDB

DAVID V. SALAMA, and
NANCY M. SALAMA,

    Plaintiffs,

v.

CITY OF PUEBLO, a municipal corporation,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Plaintiffs' Motion for Sanctions for Spoliation (["Motion"], Doc. No. 61). Defendant filed a response in opposition (Doc. No. 69), to which Plaintiffs have replied (Doc. No. 80). Additionally, the Court held a hearing on the Motion on December 3, 2025, during which it received oral argument and the testimony of the parties' experts Danny Rutherford and Dr. Jerry Ogden. (Doc. No. 88.) After reviewing the Motion, briefing, oral argument, expert testimony, and relevant law, the Court respectfully **RECOMMENDS**[1] that the Motion be **GRANTED in part and DENIED in part**.

### BACKGROUND

---

[1] Although U.S. Magistrate Judges often issue sanctions decisions as orders, this decision is issued as a Recommendation because it impacts the evidence and arguments at trial.

This case arises out of a June 25, 2022 crash. A Ford Focus driven by Elias Montoya struck a City of Pueblo bus ("Bus"), driven by Mary Jo Sisneros. The Bus subsequently crashed into Plaintiff's home. Plaintiffs' theory is that but for Ms. Sisneros' negligence, the Bus would not have crashed into Plaintiffs' home. Defendant's theory is that when the Ford Focus struck the Bus, Ms. Sisneros hit her head on the window, lost consciousness, and lost control of the Bus. (*See* Doc. No. 69 at 12-13.)[2]

On June 30, 2025, The Honorable Charlotte N. Sweeney issued an order denying Defendant's summary judgment motion. (Doc. No. 54.) She found genuine questions for the jury as to negligence (breach of duty) and causation. (*See generally id.*) Specifically, Judge Sweeney found there were genuine disputes surrounding whether the Bus driver was speeding, whether any such speeding caused or contributed to the crash, whether the Bus driver acted unreasonably in failing to counter steer, and whether the Bus driver had the capacity to react. (*Id.*) Plaintiff contends that Judge Sweeney's summary judgment Order:

> highlight[s] two key disputed issues: (1) the nature of the impact between the Bus and the Ford, including which vehicle struck the other, precisely where on each vehicle the impact occurred, and the effect of such impact on the Bus's trajectory; and (2) whether the Bus driver struck her head on a side Bus window, causing medical incapacitation.

(Doc. No. 61 at 1-2.) From Plaintiffs' perspective, the Bus itself is critical to resolving these point-of-impact and loss-of-consciousness disputes. (*See generally* Doc. No. 61 at 6-9; Doc. No.

---

[2] Defendant also contends that even if Ms. Sisneros had not lost consciousness, "the timing of the crash makes any reaction time virtually irrelevant," because "the parties generally agree that it took approximately 3.3 seconds after the initial collision with the Ford Focus for the Bus to collide with the House." (Doc. No. 69 at 12-13.) In other words, regardless of whether Ms. Sisneros lost consciousness, it was impossible to avoid crashing into Plaintiffs' home.

80-1.) But the Bus is no longer available. Defendant sold it for scrap while this litigation was pending.[3]

Plaintiff also takes issue with a missing data recorder (destroyed with the Bus),[4] and certain missing video footage. Specifically, a cartridge containing video footage was physically pulled from the Bus before it was scrapped, but a little over a minute is missing from the footage. The missing minute includes the crash.[5]

A few weeks after Judge Sweeney issued her Order, Plaintiffs filed the instant Motion. In it, Plaintiffs request the following sanctions:

> 1) an adverse instruction that the missing evidence—including the Bus and the missing footage of the crash—would have been unfavorable to Defendant; and
>
> 2) exclusion of any evidence or argument about the point of impact between the Bus and the Ford Focus, as well as exclusion of any evidence or argument that the Bus driver struck her head on the Bus window;
>
> 3) a monetary sanction to remedy the harm. Specifically, Plaintiffs ask to be reimbursed for: "fees incurred to confer regarding the missing discovery, and to research and prepare this motion, along with any subsequent supporting briefing or argument," and "one-half of their

---

[3] Notice of claim was sent December 19, 2022. This case was filed June 29, 2023. The Bus was sent for scrap September 29, 2023. (Doc. No. 69 at n. 7.)

[4] What Plaintiff references as a data recorder (and perhaps previously referred to as a Crash Data Retrieval ('CDR') system), is what Defendant calls an Electronic Control Unit. (Doc. No. 69 at 4.) Defendant claims there was a misunderstanding about terminology and suggests it led to a delay in providing a clear position on whether this information was in Defendant's possession. (*Id.*) Plaintiff claims the inconsistencies and delays demonstrate intentionality. (Doc. No. 80 at 8-11.)

[5] Defendant posits that the precise minute of the crash is missing because the point of impact was near the recording device, and on impact the device experienced a temporary loss of power. (Doc. No 69 at 16-17.) But as noted, the parties dispute the point of impact. Moreover, Plaintiff contends that Defendant's theory is undercut by the fact that the video cuts out *before* the Ford Focus comes into the frame. (Doc. No. 61 at 12, fn. 2.)

    accident reconstructionist expert's costs," and "one-half of their fees incurred in opposing Defendant's motion for summary judgment, which contained arguments for which the Bus is crucially relevant evidence"; and

    4) a monetary sanction to punish and deter. Specifically, Plaintiffs request that any remedial award of fees and costs be doubled.

(*See* Doc. No. 61 at 9-15.)

Defendant opposes, arguing it preserved the Bus for a year and had no duty to preserve beyond that because Plaintiffs never requested an inspection. (Doc. 69 at 13-14.) Defendant also argues an inspection would reveal little more than what the experts and parties already know, and both experts had access to the same information, therefore the missing Bus is not prejudicial to Plaintiffs. (*Id.* at 9-13, 16-22.) Defendant also says the destruction was not in bad faith and Plaintiffs' requested sanctions are extreme and unwarranted. (*Id.* at 14-18.)

## LEGAL STANDARD

"Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149–50 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)).

"Once it is established that a party's duty to preserve has been triggered, the inquiry into whether a party has honored its obligation to preserve evidence turns on reasonableness, which must be considered in the context of whether 'what was done—or not done—was proportional to that case and consistent with clearly established applicable standards.'" *Zbylski v. Douglas Cnty.*

4

*Sch. Dist.*, 154 F. Supp. 3d 1146, 1164 (D. Colo. 2015) (quoting *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 613 (S.D. Tex. 2010)).

Once the moving party satisfies their burden of proving spoliation, courts have broad discretion in determining an appropriate sanction. *See Pittman v. King*, 2024 WL 4866548, at *2 (D. Colo. Nov. 22, 2024) "Among the options, a court may strike witnesses, issue an adverse inference, exclude evidence, or, in extreme circumstances, dismiss a party's claims." *Id.* (internal citations omitted). However, when the moving party "seeks an adverse inference to remedy the spoliation, it must also prove bad faith." *Turner*, 563 F.3d at 1149. "Mere negligence in losing or destroying [evidence] is not enough because it does not support an inference of consciousness of a weak case." *Id.* (quoting *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1407 (10th Cir.1997)). Moreover, courts take great care to ensure that the sanction corresponds well with the culpability of the offending party and the prejudice suffered by the movant. *See, e.g., Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 167 F.R.D. 90, 104–06 (D. Colo. 1996).

## ANALYSIS

**I.  Spoliation**

A spoliation determination is relatively easy here.

The Bus was sold for scrap *after litigation had already commenced.* The individual decision maker, Pueblo Transit Director Benjamin Valdez, was apparently not aware of the pending litigation, but that fact is of no moment. Defendant was on notice, Defendant had custody and control of the Bus, and Defendant violated its duty to preserve a key piece of evidence in this litigation. *See Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1499 (10th Cir. 1994) (noting that "a legal entity ... cannot act ... by itself. It can only act through its officers

5

and employees, and these acts are attributed to the [entity] under basic principles of agency." (internal citation omitted)); *U.S. ex rel. Baker v. Cmty. Health Sys., Inc.*, 2012 WL 12294413, at *11 (D.N.M. Aug. 31, 2012) (criticizing the government for believing that the "litigation hold information would 'trickle down' to the appropriate personnel" rather than actively communicating the hold).

Defendant argues there was no duty to preserve because by the time the Bus was disposed of, "Pueblo [had] kept the totaled bus for over one year following the accident," and Plaintiffs never made a preservation request. (Doc. No. 69 at 13-14.) But that argument—to put it mildly—is unpersuasive. Even if Plaintiffs never requested an inspection, the duty to preserve is not triggered by a request, it is triggered by knowledge of litigation and knowledge that certain evidence is relevant to the litigation. *Zbylski*, 154 F. Supp. 3d at 1162–63. ("Courts in this District have found that putative litigants had a duty to preserve documents once a party has notice that the evidence is relevant to litigation or when a party knew or should have known that the evidence may be relevant to future litigation.").

Moreover, there is no question that Plaintiffs suffered at least some prejudice: the presiding judge's recent summary judgment order expressly contemplates a battle of the experts, (Doc. No. 54 at 4), a key point of contention between the experts is the point of impact between the Ford Focus and the Bus, and the Bus itself is one of the most direct pieces of evidence bearing on that dispute.

Indeed, during the December 3rd hearing, Plaintiff's expert, Danny Rutherford, testified that the Bus would meaningfully inform his reconstruction analysis. And while the Court acknowledges that experts often draw conclusions without access to the vehicle in question

6

(because accidents often destroy the vehicle in question),[6] that goes to the degree of prejudice, not whether there is any prejudice in the first place. In other words, the fact that an expert can still draw conclusions with access to other, less direct evidence, may mitigate some of the harm and reduce the prejudice, but it does not altogether eliminate the prejudice. This is particularly true here, where the point of impact is so hotly contested and Defendant's theory about loss of consciousness could easily be supported or refuted by access to the physical evidence. (*See generally* Doc. No. 61 at 8 (explaining that access to the Bus window, and any evidence like blood and hair in the window cracks would help experts assess whether the driver hit her head on the window); *see also* Doc. No. 88 (where Plaintiff's expert similarly testified that access to the window would reveal whether the driver actually hit her head and how hard).)

In sum, Plaintiffs have met their burden of providing spoliation and the Court must now fashion an appropriate sanction.

## II. Appropriate Sanction

Plaintiffs argue that Defendant intentionally disposed of the Bus during litigation, *and* intentionally deprived Plaintiffs of evidence that would have been unfavorable to Defendant. (*See generally* Doc. No. 61 at 5-14.) They are half right.

There is no question that Defendant intentionally disposed of the Bus during litigation. However, whether they intended to deprive Plaintiffs of evidence in this case—and whether that evidence would have been unfavorable—is not so clear-cut. Plaintiffs point to some circumstantial evidence tending to raise suspicion (e.g., the video footage missing at the precise minute when the incident occurred, the delayed and inconsistent disclosures regarding data). But

---

[6] Defendant's expert, Dr. Jerry Ogden, testified about this during the December 3rd hearing.

7

mere suspicion is not enough. Plaintiffs "must ... *prove bad faith*." *Turner*, 563 F.3d at 1149 (emphasis added); *see In re New Canyonlands by Night, LLC*, 415 F. Supp. 3d 1020, 1025 (D. Utah 2019) ("Bad faith, or culpability, may not mean evil intent, but may simply signify responsibility and control." (cleaned up) (internal quotations omitted)). Plaintiffs have not met their burden. There is no evidence of bad faith, misconduct, tampering, or any evidence that Defendant intended to gain some strategic advantage in litigation.[7] Under these circumstances, the Court cannot recommend an adverse inference. *Aramburu*, 112 F.3d at 1407 ("The adverse inference must be predicated on the bad faith of the party destroying the records.").

Still, some form of sanction is appropriate. In determining the appropriate sanction, the Court considers the degree of Defendant's culpability and the degree of prejudice suffered by Plaintiffs. *See generally Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 167 F.R.D. 90, 104 (D. Colo. 1996).

**A. Degree of Culpability**

Defendant is meaningfully culpable. Although there are some cases where the trigger for the duty to preserve is unclear (because, for example, a defendant plausibly argues they lacked notice the litigation was impending), that is not the case here. Here, once Defendant received the notice of claim—and certainly once litigation commenced—Defendant was unquestionably on notice of its preservation obligations. Defendant's argument that Plaintiff never requested an inspection may be relevant to the prejudice analysis below, but it rings hollow when it comes to the duty to preserve and Defendant's culpability. *See supra* at 5–6.

---

[7] In fact, it appears Defendant did not have any advantage at all because its own expert was similarly confined without access to the Bus, data, or video footage.

### B. Degree of Prejudice

The missing Bus and related evidence prejudice Plaintiffs' ability to argue with respect to two disputed issues. First, the point of impact: either the Ford Focus struck the side of the Bus in a way that necessarily forced the Bus into the House, *or* the collision between the Bus and the Ford Focus was a "front to front" collision, which might imply negligence on the part of the Bus driver in her steering, maneuvering, and decision-making pre and post-collision. Two presumably qualified experts[8] have reached entirely different conclusions about the point of impact. A physical inspection of the Bus might have resolved this issue.

Second, the loss-of-consciousness theory: Defendant asserts the Bus driver struck her head on the Bus window, leading to incapacitation and an inability to act negligently or otherwise. An inspection of the window would allow Plaintiffs to assess "the height or location of the alleged splintering on the window, and whether any such splintering aligns with the height and position of the Bus driver," as well as whether "hair or blood marks" confirm head impact. (Doc. No. 61 at 8.) Without the window, Plaintiffs are hard-pressed to refute what amounts to a commonsense theory, even if not grounded in fact.

Still, the prejudice to Plaintiffs is offset by several key facts. First, both experts were equally confined. That is, neither expert had access to the Bus or its components, which means they were on equal footing when they conducted their analyses. Second, Plaintiffs never raised this issue during discovery. Indeed, the Court is hearing these concerns for the first time on this Motion, well after the close of discovery. This suggests that at some point Plaintiffs believed they had all the evidence they needed to formulate their theories and support their expert, and it

---

[8] The parties did not lodge Rule 702 challenges.

cuts against their current refrain that the evidence is critical to their claims. Third, Plaintiffs' expert has offered a comprehensive reconstruction report that confidently draws conclusions based on other evidence. Thus, the prejudice Plaintiffs suffer—while not minimal—does not appear to be as significant as Plaintiff contends. Moreover, while the missing Bus makes it particularly difficult to refute Defendant's loss-of-consciousness theory, the same cannot be said about the point of impact. Plaintiffs' expert can—and indeed does—support his point of impact theory without access to the missing Bus.

### C. Recommended Sanction

Trial proceedings may reveal to the presiding judge that there is a need for additional or fewer sanctions, but at this juncture the Court recommends the following:

(1) Defendant shall thoroughly investigate the failure to preserve and prepare a report that details the root cause of the failure. The report shall contain a specific set of recommendations which may include policy recommendations, communication plans, training, and/or other reasonable adjustments to avoid spoliation in the future. The report and recommendations ("R&R") shall be completed no later than **January 30, 2026**. Though the R&R does not need to be submitted to the Court, counsel for Defendant shall certify, no later than **March 2, 2026,** that the R&R is complete, that Defendant has adopted at least some of the recommendations therein, and that the adopted recommendations will help prevent spoliation of evidence in the future.

(2) Defendant shall not be permitted to support a loss-of-consciousness theory through its evidence, experts, or arguments.

(3) Defendant[9] shall pay 50%[10] of Plaintiffs' fees and costs associated with briefing and arguing this Motion.

## CONCLUSION

For the foregoing reasons the Court respectfully **RECOMMENDS** Plaintiffs' Motion for Sanctions for Spoliation (Doc. No. 61) be **GRANTED in part and DENIED in part**, and Defendant be sanctioned in the manner described herein.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's

---

[9] The Court intends for fees and costs to be borne by Defendant, not litigation counsel. There is no indication that litigation counsel engaged in any misconduct. Indeed, litigation counsel has zealously advocated for her client and forcefully defended against the sanctions motion, while also being forthcoming and helpful to the Court in resolving this matter.

[10] The Court assesses only 50% of fees and costs because if Plaintiffs had raised the issue sooner, the Court might have ordered a forensic analysis of the video cartridge (with costs borne by Defendant), or fashioned some other remedy and cost shifting that may have obviated the need for this Motion altogether.

proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 11th day of December, 2025.

                                                   **BY THE COURT:**

                                                   Maritza Dominguez Braswell
                                                   United States Magistrate Judge